GERTRUDE BENTON, Plaintiff-Appellant, v. ZIRL SMITH, as Executive Director of the Chicago Housing Authority, *et al.*, Defendants-Appellees.

First District (3rd Division) No. 86—1981

Opinion filed June 17, 1987.

Cabrini Green Legal Aid Clinic, of Chicago (Richard T. Cozzola and Rachell Runnells, of counsel), for appellant.

Ann Breen Greco, Sue Ann Rosen, and LaCoulton Walls, of Chicago Housing Authority, of Chicago, for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Gertrude Benton appeals from a trial court order dismissing her suit against defendants Chicago Housing Authority (CHA), its executive director Zirl Smith, and its board chairman Renault Robinson. The trial court found that the present suit was *res judicata* as a result of a consent decree entered in an earlier class action in which plaintiff was an unnamed class member. On appeal, plaintiff contends that the doctrine of *res judicata* does not bar this action because the consent decree was not a decision on the merits; the class suit involved a different cause of action; notice of settlement in the class action was inadequate; and on the basis of equitable principles.

Pursuant to a written lease, plaintiff rents an apartment in the Cabrini Green Housing Project in Chicago. The project is run by defendants. The complaint alleges that in November 1983 the heat in the apartment stopped working. On December 24 or 25, 1983, the water pipes froze and burst. Water spilled throughout the apartment, damaging plaintiff's personal property, including clothing, a television set, beds and linens.

Defendants provided plaintiff with a property damage form, which she completed and returned to CHA personnel. Shortly thereafter, a member of the CHA staff informed plaintiff that the form needed to be notarized. Plaintiff had the form notarized and then resubmitted it to the CHA. Subsequently, the CHA informed plaintiff that it had lost the form and requested that she submit a new form. On February 3, 1984, plaintiff resubmitted the form, which reported personal property damages of $1,500. CHA subsequently sent an employee to examine plaintiff's personal property.

Meanwhile, in March 1984, five other Cabrini Green tenants filed a class action suit against defendants in Jones v. Chicago Housing Authority. The Jones complaint alleged that the five named plaintiffs improperly had been denied rent abatements. It alleged further that defendants had established a policy and practice of noncompliance with their duties under paragraph 10 of the standard lease. Paragraph 10 provides that defendants must grant rent abatement where the premises are damaged to the extent that conditions create a hazard to the life, health or safety of the occupants. The complaint alleged that defendants failed to accept written requests for rent abatement; failed to conduct investigations regarding defective conditions; failed to repair hazardous conditions; failed to offer alternative accommodations; and failed to grant rent abatements in proportion to the

seriousness of the damage and loss in value of the dwelling.

Count I of Jones sought a declaratory judgment that the policy and practices of defendants violated duties owed the class members under paragraph 10 of the lease and an order requiring defendants to promulgate standards and rules to comply with duties owed under paragraph 10. Count II in Jones, which was subsequently dismissed, sought a determination as to the amount of rent abatement to which the individually named plaintiffs were entitled pursuant to paragraph 10 of the lease.

On June 13, 1984, the trial court in Jones certified the class of all tenants who have, since November 1, 1983, filed written requests for rent abatement, or who will file such requests, based upon conditions in CHA buildings which are hazardous to their life, health and safety.

In the present case, on November 5, 1984, a CHA attorney wrote to Benton stating that her claim for property damages was denied. The letter continued, "If you are interested in pursuing an action for negligence and to recover damages, you should seek appropriate legal action through the courts."

In Jones, a notice of proposed settlement of the class action was mailed to plaintiff here and other class members in late 1984. The notice stated that in the pending class action plaintiffs sought a declaration that the CHA failed to grant tenant requests for rent abatement, pursuant to the procedures required by paragraph 10 of the lease, when conditions in the apartments were hazardous to the life, health and safety of the tenants. Three subclasses were created. Subclass A consisted of the named representatives and tenants who requested rent abatement and had placed their rent in escrow pending settlement of Jones. These plaintiffs would receive a 50% rent abatement. The notice stated that subclass A plaintiffs' "participation in this settlement shall constitute a release of any and all claims, including breach of the implied warranty of habitability, which are relevant to the pending eviction *** for non-payment of rent."

Subclass B, of which Benton was a member, consisted of tenants who had requested rent abatement but had not placed their rent in escrow. These plaintiffs would receive a 45-day rent credit. The notice stated: "Plaintiffs' counsel [Legal Assistance Foundation of Chicago], as a condition of settlement in the Consent Decree, have agreed not to prosecute any warranty of habitability claims that members of settlement class B have for the period of time from November 1, 1983 up to December 1, 1984." Subclass C, of which Benton was also a member, consisted of tenants who might bring claims for rent abatement in the future.

The notice also advised tenants that, if they chose not to participate in the class action, they would be excluded from any award; they might be barred by the statute of limitations from other recovery "on this claim"; they would not be represented by the class' attorneys; and they might be subject to liability for unpaid rent and eviction. The notice also informed tenants that, if they chose to participate in the class, they would be "bound by and subject to any judgment in the case." Tenants could hire their own counsel and "enter an appearance" in the case, but if they did not do so, plaintiffs' counsel would represent them without charge.

On December 20, 1984, a consent decree was entered by the trial court in Jones. The decree incorporated the information which was contained in the notice and also provided for defendants' adoption and implementation of an attached administrative circular as its official administrative rule regarding prospective rent abatement claims by all CHA residents. The decree provided that it was a final judgment order and served "as a release by plaintiffs and the plaintiff sub-classes of all claims arising out of Count I and Count II." The decree also contained an express denial of liability on the part of defendants. Benton did not opt out of the class, and she received the 45-day rent credit along with other members of subclass B.

In the present action, in November 1985, Benton retained Cabrini Green Legal Aid Clinic as counsel and filed suit against defendants. The complaint alleged the relevant facts regarding the absence of heat in Benton's apartment, the frozen and burst water pipes, and the resulting damage to Benton's personal property.

Count I of the complaint alleged breach of paragraph 8 of the written lease. Paragraph 8 of the lease provides that the CHA shall maintain the premises in a safe condition; comply with relevant local and Federal requirements; make necessary repairs; maintain plumbing and other facilities; and supply running water. Count II of the complaint alleged breach of an implied warranty of habitability. Count III alleged negligence. Benton sought $1,500 in damages. On June 23, 1986, the trial court dismissed the property damage lawsuit pursuant to section 2—619(a)(4) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(4)). The court found that as a matter of law the issues could have been litigated in Jones.

■ A defendant may move to dismiss an action on the ground that the cause of action is barred by a prior judgment. For purposes of a section 2—619 motion to dismiss, all well-pleaded facts are admitted, together with all reasonable inferences which can be drawn from such facts. (Barliant v. Follett Corp. (1978), 74 Ill. 2d 226, 384

N.E.2d 316.) The burden of proof is on the party moving for a dismissal. *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878.

We find that the doctrines of collateral estoppel and *res judicata* do not bar the present action because the cause of action presented here differs from that presented in Jones, and the issues raised here could not have been litigated in Jones.

■ A critical distinction exists between the often confused doctrines of *res judicata* and collateral estoppel. An earlier judgment may have a preclusive effect in a later action under both doctrines. Under the broader doctrine of *res judicata*, a final judgment on the merits which is rendered by a court of competent jurisdiction is conclusive as to the rights of the same parties or their privies, but that judgment bars a later action only if it involves the same cause of action. Significantly, it is conclusive not only as to every matter raised in the first action, but also as to any matter which might have been raised. *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.

■ ■ In contrast, under the doctrine of collateral estoppel, a final judgment on the merits which is rendered by a court of competent jurisdiction is conclusive as to the rights of the same parties or their privies, and that judgment bars a later action even when it involves a different cause of action. Unlike *res judicata*, however, collateral estoppel bars subsequent actions only as to the point or question actually litigated and determined in the prior suit and not as to other matters which might have been litigated and determined. *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.

In the present case, Benton refers to *res judicata*, but is actually arguing that collateral estoppel should be applied because the causes of action here and in Jones are different. Any estoppel would apply only to issues actually litigated in Jones. Defendants counter that *res judicata* is the applicable doctrine because the causes of action are identical, and thus the issues raised here are barred because they could have been raised in Jones.

■ In order for a previous judgment to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the previous action. (*Coulter v. Renshaw* (1981), 94 Ill. App. 3d 93, 418 N.E.2d 489.) The party asserting the preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment. (*People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65, 360 N.E.2d 773; *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 444 N.E.2d 205.) This is a heavy burden of proof. (*Gale v. Transamerica Corp.* (1978), 65 Ill. App. 3d 553, 382

N.E.2d 412.) A prior adjudication in a properly entertained class action is binding on class members in subsequent litigation. (*Cooper v. Federal Reserve Bank* (1984), 467 U.S. 867, 81 L. Ed. 2d 718, 104 S. Ct. 2794; *People ex rel. Furlong v. Election Commissioners* (1949), 404 Ill. 326, 88 N.E.2d 864.) A judgment is conclusive in a subsequent action between the same parties on any issue actually litigated and determined, if its determination was essential to that judgment. *Cooper v. Federal Reserve Bank* (1984), 467 U.S. 867, 81 L. Ed. 2d 718, 104 S. Ct. 2794.

■ A decree operates as *res judicata* of the claims where the facts and relief sought are essentially the same. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.) Illinois courts have used both the "same evidence" test and a "transactional" approach to determine if causes of action are the same. (*Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 484 N.E.2d 1187; see also *Hagee v. City of Evanston* (7th Cir. 1984), 729 F.2d 510; *Marrese v. American Academy of Orthopedic Surgeons* (N.D. Ill. 1986), 628 F. Supp. 918.) We need not choose between the tests because under either approach we reach the same result. See *Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 484 N.E.2d 1187.

■ A cause of action consists of a right belonging to plaintiff, and a violation of that right due to defendant's wrongful act or omission, for which the law provides a remedy. (*Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 484 N.E.2d 1187.) Here, Benton's alleged right is to relief for property damages caused by defendants' negligence, breach of the lease, and breach of a warranty of habitability. In Jones, the plaintiff class' alleged right was to relief for improperly denied rent abatement request, caused by defendants' improper practice of handling such requests. The rights are different and the wrongful acts alleged are different.

The legal issues and operative facts also differ. In the Jones case, the plaintiff class challenged defendants' procedures in processing rent abatement claims. The complaint alleged that the policies and practices used by defendants violated paragraph 10 of the federally mandated form lease. Paragraph 10 requires defendants to grant rent abatement to tenants when conditions in the apartments are hazardous to life, health and safety. The issue, then, was defendants' compliance with regulatory, statutory and contractual guidelines with regard to the processing of rent abatement claims. The class action was never framed or presented as a suit seeking relief for individual personal property damages. In the present case, Benton challenges defendants' responsibility for causing damage to her personal prop-

erty. Rent abatement and property damage are distinguishable. *Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 479 N.E.2d 915.

Moreover, the evidence required to prove each case differs. The inquiry regarding Benton's claim involves one CHA decision on an individual property damage claim. In a pattern and practice class action the focus is not on individual property damage claims but instead on a pattern of improper decision making. There is a wide gap between the evidence needed to establish the two actions. Even if such a class action successfully proves an improper pattern of policy or decision making by defendant, the individual's property damage claim could fail. Similarly, even if the individual property damage claim is successful, there would be no proof of a consistent pattern of improper actions by defendant in regard to rent abatement. (See *Cooper v. Federal Reserve Bank* (1984), 467 U.S. 867, 81 L. Ed. 2d 718, 104 S. Ct. 2794.) The class action subject matter pertains only to rent abatement. The damage to personal property such as beds, linens and televisions does not in any way establish the existence of hazardous living conditions which might also require a rent abatement.

██ ██ Defendants point to some overlapping facts in the two cases, but these are not the key or operative facts. Two causes of action are not necessarily the same merely because they arise out of the same set of facts. (*Fountas v. Breed* (1983), 118 Ill. App. 3d 669, 455 N.E.2d 200; *La Grange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 423 N.E.2d 496; *Brewer v. Daubert Chemical Co.* (1979), 72 Ill. App. 3d 718, 391 N.E.2d 110.) Thus, the fact that both the present action and Jones involve a loss of heat in the Cabrini Green buildings in late 1983 does not require us to find that the two cases involve the same cause of action. Mere similarity in pleadings does not determine the issue of *res judicata* or collateral estoppel. (*Pierog v. H. F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 351 N.E.2d 249.) Moreover, it has been held that where each suit rests upon different acts breaching different provisions of the same contract, the causes of action may be different. See *Gittings v. Hilton* (1979), 77 Ill. App. 3d 911, 396 N.E.2d 843; *Kahler v. Don E. Williams Co.* (1978), 59 Ill. App. 3d 716, 375 N.E.2d 1034; *Turzynski v. Liebert* (1976), 39 Ill. App. 3d 87, 350 N.E.2d 76.

██ This case concerns a different lease section, different facts, different evidence, and different types of relief. Under the doctrine of collateral estoppel, the Jones case only precludes Benton from filing a similar challenge to defendants' pattern and practice of processing rent abatement claims during the relevant period. We find that defendants have not sustained their burden of proving with certainty

and clarity that the present action is barred by Jones. See *People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65, 360 N.E.2d 773.

 ██ We also find that *res judicata* would not bar this action because the issues here could not have been raised in the earlier action. (See *Gannon v. Daley* (N.D. Ill. 1981), 531 F. Supp. 287.) Under defendants' theory, each member of the Jones class would have been required to intervene to litigate the merits of any individual property claims that might have arisen during the relevant period. Class actions are meant to determine common questions. (*Cooper v. Federal Reserve Bank* (1984), 467 U.S. 867, 81 L. Ed. 2d 718, 104 S. Ct. 2794; *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478, cert. dismissed (1982), 459 U.S. 86, 74 L. Ed. 2d 249, 103 S. Ct. 484.) The introduction of individual property damage claims arising during the same period of time could defeat this purpose and make the class unmanageable. (See *Cooper v. Federal Reserve Bank* (1984), 467 U.S. 867, 81 L. Ed. 2d 718, 104 S. Ct. 2794; *Wright v. Collins* (4th Cir. 1985), 766 F.2d 841.) Benton did not have a full and fair opportunity to litigate her individual property damage claim in Jones. (See *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 58 L. Ed. 2d 552, 99 S. Ct. 645; *Jones v. City of Alton* (7th Cir. 1985), 757 F.2d 878; *Hagee v. City of Evanston* (7th Cir. 1984), 729 F.2d 510.) *Res judicata* does not bar the present action.

 Finally, equity dictates that the doctrines of *res judicata* and collateral estoppel not be applied technically so as to create inequitable and unjust results. (*Jones v. City of Alton* (7th Cir. 1985), 757 F.2d 878, 885, citing *Rotogravure Service, Inc. v. R. W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 524, 395 N.E.2d 1143, 1148-49.) A preclusive effect will not be applied where it results in manifest injustice. *Hansberry v. Lee* (1940), 311 U.S. 32, 85 L. Ed. 2d 22, 61 S. Ct. 115.

In January 1984, Benton filed a claim on a CHA form. CHA told her to have the form notarized and she did so. CHA then lost the form, and Benton complied with its request to fill out a second form. In the meantime, the Jones suit was filed. Fully aware of the issues raised in the Jones complaint and the details of the proposed settlement, CHA wrote to Benton, informing her that her claim was denied. This letter was written eight months after the Jones complaint was filed, and 45 days prior to the entry of the Jones settlement order. The letter made no mention of the pending class action. Defendants advised Benton, however, that in regard to her personal property damage claim she could pursue legal action through the courts. When Benton followed that advice, defendants successfully contended that

she was barred from pursuing legal action through the courts.

We find the letter to be misleading. Defendants' handling of Benton's property damage claim indicates that defendants treated the claim as separate from the issues raised in Jones. Under these circumstances, we find it would be inequitable to apply the doctrine of *res judicata* or collateral estoppel such that it would bar Benton from bringing the present action. See *Crowder v. Lash* (7th Cir. 1982), 687 F.2d 996.

In view of our holding, it is unnecessary to consider Benton's additional contentions that the Jones consent decree was not a judgment on the merits, and that thus no issues were actually litigated in that action, and that the notice of the Jones class action to her was inadequate.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Reversed and remanded.

RIZZI and FREEMAN, JJ., concur.