**In re Jerry L. MARSHALL and Henrietta S. Marshall, Debtors.**

**Jerry L. MARSHALL and Henrietta S. Marshall, Plaintiffs,**

v.

**SECURITY STATE BANK OF HAMILTON, Defendant.**

**Bankruptcy No. 90–80139.**
**Adv. No. 90–8056.**

United States Bankruptcy Court, C.D. Illinois.

Dec. 6, 1990.

Barry M. Barash, Galesburg, Ill., for plaintiffs.

William M. McCleery, Jr., Quincy, Ill., for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

In November of 1988, the Security State Bank of Hamilton (BANK) loaned the Plaintiffs $17,911.68 to purchase a 1985 Oldsmobile Cierra and took a security interest in the vehicle. In August of 1989, that loan and two others were consolidated into a single loan with the BANK again taking a security interest in the vehicle. The instrument evidencing the consolidated loan was a preprinted combined Note, Security Agreement and Truth in Lending Disclosure Statement. The instrument was completed by a BANK officer checking a box in the Truth in Lending disclosure section which read as follows:

/xx/ collateral securing other loans with you may also secure this loan.

and filling in the Security Agreement section by typing in the year, make, model and serial number of the vehicle.

Subsequently, the Plaintiffs filed a Chapter 13 plan which was confirmed by this Court. Twelve days after confirmation the Plaintiffs brought this adversary proceeding alleging a violation of Federal Truth in Lending, 15 U.S.C. Section 1638(a)(9), and Regulation Z, 12 C.F.R. Section 226.18(m), in that the BANK took a security interest in the vehicle without disclosing the security interest.[1] Stated another way, the Truth in Lending disclosure section fails to "track" the security agreement section of the combined instrument.

The BANK raised three defenses. The first is that no Truth in Lending violation occurred because the instrument evidencing the consolidated loan represents a refinance of the original vehicle loan and discloses that the consolidated loan is secured by the vehicle given as security for the original vehicle loan. Second, if a violation occurred, it was the result of a bona fide error. Third, the Truth in Lending claim was merged into the confirmed plan.

Section 226.18(m) of Regulation Z requires a creditor to disclose a security interest by either disclosing a security interest has been or will be acquired in the property being purchased as part of the transaction, or in other property identified by item or type. Section 226.17(a) of Regulation Z provides that required disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosure required by Section 226.18.

■ Section 226.17(a) of Regulation Z requires all the disclosures, including the disclosure of any security interest being given, to be in one location on the instrument. That location is commonly called the "Federal Box". Although the present requirements of Truth in Lending are the result of the Truth in Lending Simplification and Reform Act, they do not give creditors "Carte Blanche" to make the disclosures in any fashion a particular creditor may feel is appropriate. The Truth in Lending Act and Regulation Z, as simplified, still provide a format for disclosures to be used by all creditors so borrowers will be informed as to the nature of the transaction and be able to compare and shop for credit from various creditors. In this case the actual reference to the vehicle is outside the "Federal Box" and cannot be considered to be part of the required disclosures. The disclosure in the "Federal Box" is that "collateral securing other loans with you may also secure this loan." The issue becomes whether disclosure in the "Federal Box" meets the requirements of Section 226.18(m). The Plaintiffs rely on Section 226.20(a) of Regulation Z, which provides:

A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer....

Comment 20(a)–1 provides:

Definition. A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties' contract and applicable law. The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation. In any form, the new obligation must completely replace the prior one.

. . . .

A substitution of agreements that meets the refinancing definition will require new disclosures, even if the substitution does not substantially alter the prior credit terms.

Thus, it is very clear from the above that a new disclosure was required when the Plaintiffs' loans were refinanced.

---

**1.** The Truth in Lending Regulations, Regulation Z, can be found at 12 C.F.R., Section 226.18; 15 U.S.C.A., following Section 1700.

■ The Plaintiffs also rely on this Court's recent decision of *In re Hatfield*, 117 B.R. 387 (Bkrtcy.C.D.Ill.1990), which also involved a refinancing. In that case, the creditor disclosed in the "Federal Box" that it was taking a security interest in "the goods being purchased." The debtors argued that the disclosure was not accurate because the goods were purchased earlier and not when the loan was refinanced. This Court agreed with the debtors, stating:

The Truth in Lending Act is highly technical and strict compliance is required. [The creditor] having access to the loan file and being a sophisticated lender, knew the [debtors] were giving a security interest in the bedroom furnishings they purchased fifteen months earlier. But the [debtors] may or may not have remembered the specifics of the earlier transaction, and it is not unreasonable to expect [the creditor] to disclose to the [debtors] what occurred fifteen months earlier by listing the bedroom furnishings rather than making a general reference to "goods being purchased." Meaningful disclosure is achieved by [the creditor] telling the debtors the specific items of furniture that were subject to the security interest at the time of the refinance rather than relying on the [debtors'] memory of what transpired at the time of the original loan some fifteen months earlier.

In this case, the refinance occurred some nine months later, and the Plaintiffs, just as the debtors in *Hatfield*, may or may not have remembered the terms of the original vehicle loan. To take the BANK's position further, then, any refinancing, years down the line, could make the same disclosure and the Plaintiffs would have long forgotten what the security for the original loan was. The rule set forth in *Hatfield* applies here—the disclosure made by the BANK was simply not meaningful.

■ The BANK's reliance on the disclosure of "collateral securing other loans ..." is misplaced. When the loan was refinanced the original vehicle loan was paid off. The disclosure referred to a loan

that no longer existed. Comment 18(m)–5 to Regulation Z, Section 226.18(m), makes clear what the language relied on by the BANK refers to:

Spreader clause. The fact that collateral for pre-existing credit with the institution is being used to secure the present obligation constitutes a security interest and must be disclosed. (Such security interests may be known as "spreader" or "dragnet" clauses, or as "cross-collateralization" clauses.) A specific identification of that collateral is unnecessary but a reminder of the interest arising from the prior indebtedness is required. The disclosure may be made by using language such as "collateral securing other loans with us may also secure this loan." At the creditor's option, a more specific description of the property involved may be given.

Surely a creditor cannot avoid the specific disclosure requirements of Section 226.18 by disclosing a spreader clause and an extinguished security interest.

■ The next issue is whether the BANK's failure to disclose was the result of a bona fide error. Section 130(c) of the Truth in Lending Act provides as follows:

(c) A creditor or assignee may not be held liable in any action brought under this section or section 125 for a violation of this title if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this title is not a bona fide error. 15 U.S.C. Section 1640(c).

The majority of cases take the position that Section 130(c) is not available for other than clerical errors. The Seventh Circuit took this position back in 1974, in *Haynes v. Logan Furniture Mart, Inc.* 503 F.2d 1161 (7th Cir.1974), stating:

Moreover, both the language and the legislative history of the section indicate that exculpation was for matters in the nature of clerical errors and that the "provision is wholly inapposite to deal with errors of law like defendant's though made in entire 'good faith'." We note that a defendant seeking absolution under this section is required to show not merely that his acts or omissions were unintentional, but also that due care was taken to create "procedures ... to avoid any such error." This obvious reference to internal controls in a law mandating the presentation of many exact figures and percentage unique to each transaction plainly suggests that the scope of the section was intended to encompass basically only clerical errors. Furthermore, the provision was only included in the Senate's bill after complaints were raised that such an act would, in effect, impose strict liability, because clerical and mathematical errors would inevitably result as a consequence of the complexity of annual rate computations. We find, therefore, that section 1640(c) offers no shelter from liability for the defendant, whose error whether in good faith or not was judgmental with respect to legal requirements of the Act and not clerical in nature. (Citations omitted).

At that time, Section 130(c) provided:

A creditor may not be held liable in any action brought under this section for a violation of this part if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Some courts have held that the amendment to the Truth in Lending Act which resulted in the present language of Section 130(c) changed the scope of the Act, and that it is no longer limited to clerical errors. *See Fallat v. Central Bank*, 1988 U.S.Dist. Lexis 13041, on reconsideration, 1988 U.S. Dist.Lexis 13151 (1988). But, more accurately, the change in the statute was discussed by the court in *Herrera v. First*

*Northern Sav. and Loan Ass'n.*, 805 F.2d 896 (10th Cir.1986):

While defendant correctly points out that two different interpretations of section 1640(c) emerged in the 1970s—one view construing it to apply only to mistakes of a clerical or mathematical nature and the other construing section 1640(c) more broadly to encompass good faith efforts at compliance—Congress resolved this issue when it amended the Act by the Truth-in-Lending Simplification and Reform Act of 1980, Pub.L. No. 96–221, tit. VI, 94 Stat. 132, 168 (1980), reprinted in 1980 U.S.Code, Cong. & Admin.News 236, 251. Congress clearly stated in its amendment of section 1640(c) that "[e]xamples of a bona fide error include, but are not limited to clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error." 15 U.S.C. Section 1640(c) (1982). *See also* S.Rep. No. 96–368, 96th Cong., 2d Sess. 30, reprinted in 1980 U.S.Code Cong. & Admin.News 268.

Defendant's violation was not clerical, mathematical, or due to printing or computer errors. It was perhaps an "error of legal judgment," a belief that it had complied with the Act. However defendant's failure to adopt a disclosure statement which complied with TILA and Regulation Z requirements, even if in good faith, is not excusable under section 1640(c).

For the same reasons, this Court concludes that the BANK's error here is an error of legal judgment, believing that the spreader disclosure was sufficient, or that the listing of the security interest in the security agreement section itself was sufficient.

The next issue is whether the Truth in Lending claim was merged into the confirmed plan. The BANK relies on Section 1327(a) of the Bankruptcy Code which provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or

not such creditor has objected to, has accepted, or has rejected the plan. 11 U.S.C. Section 1327(a).

The Official Comment provides, in pertinent part:

Section 1327 makes the confirmed plan binding on the debtor and each creditor, whether or not the creditor is dealt with in the plan, and whether or not the creditor has objected to, accepted or rejected the plan. Moreover, the order of confirmation is *res judicata* and not subject to collateral attack.

■ *"Res judicata"* is one of those terms that is used loosely by some courts and sometimes incorrectly applied. The doctrine of *res judicata* gives conclusive effect to a prior judgment where the subsequent action is between the same parties and on the same claim or cause of action. Here, the "same claim or cause of action" requirement is obviously not met and the question is whether the truth in lending claim is a compulsory counterclaim. In *Christy v. Heights Finance Corp.*, 101 B.R. 542 (C.D.Ill.1987), the court rejected the defendant's position that the truth in lending claim was barred under the principles of *res judicata* because it was a compulsory counterclaim that was not raised in the debtors' Chapter 7 bankruptcy proceeding, stating:

The Defendant also claims that the Truth–In–Lending Act claim was a compulsory counterclaim in the bankruptcy proceeding on the underlying debt, and it is barred in this Court because it was not raised earlier. In the case of *Valencia v. Anderson Brothers Ford*, 617 F.2d 1278 (7th Cir.1980), rev'd on other grounds, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), a suit brought under the Truth–In–Lending Act, the Seventh Circuit stated that the defendant creditor's claims for the debt involved in the lending transaction was not a compulsory counterclaim under Federal Rule of Civil Procedure 13(a). The court explained that the sole connection between a Truth–In–Lending Act claim and debt counterclaim is the initial execution of the loan document. The court added that

this connection is insignificant in light of the fact that the Truth–In–Lending Act claim and debt counterclaim raise different legal and factual issues governed by different bodies of law. According to the court:

"A TILA suit for inadequate disclosure such as the instant case, can often be resolved by an examination of the face of the loan document. A debt counterclaim, on the other hand, can raise the full range of state law contract issues. (Footnote omitted). The two claims do not, as the Fifth Circuit [in *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357 (5th Cir.1979)] held, spring from the same 'aggregate of operative facts.' *Plant*, 598 F.2d at 1361. The rights and obligations of the parties with respect to the two claims hinge on different facts and different legal principles." 617 F.2d at 1291–92.

The United States Supreme Court reversed the Seventh Circuit's decision in *Valencia*, but the Supreme Court's decision focused upon the Seventh Circuit's interpretation of the statutory language of the Truth–In–Lending Act and did not address the compulsory counterclaim issue.

This case is factually different from *Valencia* because the Defendant is asserting that the Truth–In–Lending Act claim was a compulsory counterclaim under Rule 13(a) in the action brought by Heights Finance in the bankruptcy case on the underlying debt. However, this Court does not believe that the procedural posture of the case would change the outcome that the Seventh Circuit reached in *Valencia*. Based upon the above-cited Seventh Circuit cases, the Court finds that the Truth–In–Lending Act claim was not a compulsory counterclaim that the debtors (or the bankruptcy trustee) were required to bring in the bankruptcy suit on the underlying debt in order to avoid the bar of *res judicata*.

The Seventh Circuit Court of Appeals, in *Asset Allocation & Mgt. v. Western Employers Ins.*, 892 F.2d 566 (7th Cir.1990), recently questioned its decision in *Valencia*, stating that it may need to be reviewed

in the future. But, until it does, this Court is bound by *Valencia* and *Christy*.

 Even for those courts that hold a truth in lending claim to be a compulsory counterclaim, failure to assert a truth in lending claim prior to confirmation does not necessarily bar a later action. An early case permitted a Chapter 13 trustee to pursue a truth in lending claim. In *In re Weaver*, 632 F.2d 461 (5th Cir.1980), the Chapter 13 trustee sought to assert a truth in lending claim against a creditor post-confirmation. In determining that the trustee's action was not barred, the court stated:

> Moreover, the duty of the Chapter XIII trustee to object to invalid claims does not cease upon confirmation of the wage earner plan. Appellee urges, however, that section 70(i) of the Bankruptcy Act divests the trustee of title to the truth-in-lending claim of the debtor. Section 70(i) provides that title to the debtor's property, which passed to the trustee upon adjudication, revests in the debtor upon confirmation of the plan unless the order of confirmation specifies otherwise. This section reflects the fact that the trustee is empowered to pay creditors solely out of future earnings, and not out of any property which the wage earner may hold at the time of confirmation. Section 70(i) does not, however, relieve the trustee of his duty to examine and object to improper claims. Section 611 of the Bankruptcy Act grants to the bankruptcy court exclusive jurisdiction over the wage earner and his property until consummation of the entire proceeding, and under section 662 the trustee is not discharged until consummation of the plan. *In Matter of Henderson*, 577 F.2d 997 (5th Cir.1978), we held that a Chapter XIII trustee could object to claims under the Georgia Industrial Loan Act from twelve to seventeen months after confirmation of the wage earner plan. We see no meaningful distinction between the invalidation by the trustee of the entire claim of a creditor and a truth-in-lending action which would only reduce the amount owed to a creditor under the plan.

In so concluding, the court discussed the time frame under a Chapter 13 case:

> It is important to note the chronology of the confirmation of the plan. No secured claims had to be filed until the date of the first meeting, Rule 13–302(e)(1), and unsecured claims were timely if filed within six months following the first meeting, Rule 13–302(e)(2). Yet, in these cases, the first meeting of creditors and the confirmation of the plan took place at one meeting. Obviously, no trustee could be expected to examine all claims thoroughly by the date of confirmation.

The claims brought by the Chapter 13 trustees in *Weaver* would permit a deduction of the statutory penalty from the amount owed to the creditor under the plan.

In the present case, unlike *Weaver*, the action is brought by the Plaintiffs seeking a direct recovery. A suit by the Chapter 13 trustee would not benefit the Plaintiffs at all—their Chapter 13 plan is a base plan and they are obligated to pay in a specified amount each week. Of course, the Plaintiffs should have disclosed the truth in lending claim in their schedules, but even if they would have, they could have claimed it as exempt. Furthermore, they could always amend their schedules, to correct the defect. Under the plan, unsecured creditors are getting $1,027.00. Thus, they are still getting more under the plan than they would in a Chapter 7, setting aside the fact that it appears that the truth in lending claim would in fact be exempt. Thus, the Plaintiffs' position on this point is the correct one.

 The final issue is whether the Plaintiffs are entitled to prejudgment interest. The case relied on by the Plaintiffs in requesting prejudgment interest is *Gorenstein Enterprises v. Quality Care–USA*, 874 F.2d 431 (7th Cir.1989), a case involving an infringed trademark. After noting that the infringement had been deliberate and that it might have been an abuse of the trial court's discretion if it had failed to award prejudgment interest, the court continued:

While the statute makes no reference to prejudgment interest, the Gorensteins do not question that federal common law authorizes the award of such interest in appropriate cases to victims of violations of federal law. [Lengthy citation to various cases]—the last a trademark case. The areas in which such interest is allowed, illustrated by the cases just cited, are diverse. The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay.

The award of prejudgment interest is particularly appropriate in a case such as this where the violation was intentional, and indeed outrageous.

In a later case, *Lorenzen v. Emp. Ret. Plan of Sperry & Hutchinson*, 896 F.2d 228 (7th Cir.1990), the court awarded prejudgment interest in an action under ERISA, brought by the widow of an employee claiming a breach of fiduciary duty and a resulting loss in retirement benefits. The court stated:

Whether to award prejudgment interest in suits under federal statutes is a question of federal law and, with growing awareness of the time value of money, the trend is running in favor of such awards. (Citations omitted). It is a salutary trend—without it there is incomplete compensation to the victims of wrongdoing and there are added incentives to resist and delay the bringing of the wrongdoer to book—which led us recently to conclude that the time had come "to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations." (Citation omitted.) We can think of no reason why the presumption should not apply to ERISA cases; it does apply.

The award of prejudgment interest is necessary for full compensation of the victims of wrongdoing, as we have said, and there was wrongdoing here—not in the refusal to give [the spouse] the larger amount that she sought but in the refusal to give her the smaller amount to which she was incontestably entitled. Moreover, the award of prejudgment interest has an independent ground in this case: the principal of unjust enrichment. (Citation omitted). The retirement plan held money that belonged to [the spouse]—held it on her account, as it were. Now that the collateral dispute is over, the plan must return it to her together with the fruits that it has gleaned by holding on to it.

Thus, there is a growing trend to award prejudgment interest in many kinds of federal cases. As a general rule, however, prejudgment interest is not awardable upon penalties. The reason behind the rule was stated in *Illinois Cent. R. Co. v. Texas Eastern Trans. Corp.*, 551 F.2d 943 (5th Cir.1977):

The rationale of the rule that penalties do not draw prejudgment interest is that a penalty does not reflect damages to the plaintiff but is assessed to encourage certain conduct on the part of the party penalized.

Deciding in that case that the demurrage charge imposed was part compensation and part penalty, the court awarded prejudgment interest. *See also Marshall v. Painting by C.D.C. Inc.*, 497 F.Supp. 653 (E.D.N.Y.1980) (no prejudgment interest on penalty under OSHA).

Under Section 130(a) of the Truth in Lending Act a creditor is liable for actual damages, and statutory damages of twice the finance charge, with a minimum liability of $100.00 and a maximum liability of $1,000.00. In *Davis v. Werne*, 673 F.2d 866 (5th Cir.1982), the court stated that under the Truth in Lending Act, in order to penalize noncomplying creditors and to deter future violations, consumers may recover the statutory damages even if they have not sustained any actual damages. The statutory damages are in the nature of a penalty.

█ It follows then, prejudgment interest should not be awarded in this case. While there is a violation of Truth in Lending, the Plaintiffs failed to establish any

actual damages. Had they done so, the concept of prejudgment interest might have application in order to adjust Plaintiffs' actual damages to reflect the time value of money and to thereby fully compensate the Plaintiffs.[2] Instead, they seek the statutory damages which are imposed to deter future violations and not to fully compensate the Plaintiffs.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in the Opinion entered this day;

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:

1. That the Plaintiffs' Motion for Summary Judgment is GRANTED, except no prejudgment interest is granted.

2. That the Defendant's Motion for Summary Judgment is DENIED.

3. That judgment is entered in favor of the Plaintiffs and against the Defendant in the amount of $1,000.00, plus reasonable attorney's fees to be determined by this Court, and costs.

4. That the Plaintiffs are directed to file within 14 days, affidavits documenting the costs and fees sought, and the Defendant is allowed 14 days thereafter to respond to the Plaintiffs' statement for fees and costs.

---

**2.** This dicta should not be construed to mean this Court would allow prejudgment interest in a case of actual damages. Such a determination cannot be made until an actual case is properly before the Court and the Court has heard the arguments pro and con.