Zenovia **ELLIOTT**, on behalf of herself and all others similarly situated, Plaintiff,

v.

**ITT CORPORATION**, formerly known as International Telephone & Telegraph Corporation; ITT Consumer Financial Corporation; Aetna Finance Company, doing business as ITT Financial Services, formerly known as ITT Thorp Corporation; ITT Lyndon Life Insurance Company; and American Bankers Life Assurance Company of Florida, Defendants.

No. 90 C 1841.

United States District Court, N.D. Illinois, E.D.

Dec. 4, 1992.

Andy Robert Norman, Daniel A. Edelman, Law Offices of Daniel A. Edelman, Lawrence Walner, Lawrence Walner & Associates, Ltd., Chicago, IL, and William H. Crowder, Crowder & Bedor, St. Paul, MN, for plaintiff.

Geraldine M. Alexis, Sidley & Austin, Robert Patrick Cummins, Kass A. Plain, Bickel & Brewer, Chicago, IL, for defendants.

Geraldine M. Alexis, Daniel Stephen Kelly, Sidley & Austin, Mark Andrew Yeager, Grippo & Elden, Robert Patrick Cummins, Kass A. Plain, Bickel & Brewer, Chicago, IL, for defendant, American Bankers Life Assurance Co. of Fla.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Zenovia Elliott ("Elliott"), has brought a consumer class action against defendants ITT Corporation, ITT Consumer Financial Corporation, Aetna Finance Company, doing business as ITT Financial Services, ITT Lyndon Life Insurance Company, and against American Bankers Life Assurance Company of Florida [1], alleging that the defendants engaged in a practice known as "insurance packing." [2]  Elliott brings her

---

1. Because the disposition of the motions before this Court make it unnecessary to address issues which might be unique to American Bankers, we will refer to all defendants collectively as "defendants" or "ITT."

2. Plaintiff defines "insurance packing" as the use of unfair and deceptive means to induce the purchase of insurance in connection with consumer credit transactions.  Complaint at ¶ 1.

claims pursuant to § 2 of the Illinois Consumer Fraud Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., and § 125 of the federal Truth in Lending Act. 15 U.S.C. § 1635. Plaintiff has moved for class certification, and, in the face of defendants' objection to her ability to represent the class, has also moved to amend the complaint to add another person as class representative. In addition to opposing class certification, defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) on the ground that Elliott's claims are barred by *res judicata*. For the following reasons, we deny plaintiffs' motions for class certification and leave to amend and deny defendants' motions for summary judgment.

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Moreover, we must view the record and all possible inferences in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (7th Cir.1988). Summary judgment should be denied "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### II. Factual Background

On January 7, 1988, Elliott and her husband borrowed $2,000 from ITT. At the same time they were given a disclosure statement which reported that the purchase of insurance was not required to obtain the loan. In signing the statement, the Elliotts indicated that they did not want to purchase any insurance products. On January 13, 1988, Elliott and her husband executed a promissory note with ITT ("the Debt") and signed the same disclosure statement, this time indicating that they did want insurance.

Unable to work due to health problems, the Elliotts filed their first Chapter 13 bankruptcy petition on June 21, 1988. The Elliotts provided an income statement that listed their assets and liabilities and acknowledged the Debt as their single largest debt. The Elliotts did not assert or list any claims against ITT at this time. During the bankruptcy proceeding, the Elliotts took out a new loan without realizing that this was a violation of the Bankruptcy Code. In January, 1989, the first bankruptcy proceeding was dismissed.

On February 1, 1989, Mr. Elliott filed a second bankruptcy petition. In the Schedule for "Debts and Debtor's Proposed Plan of Dealing with Creditors," he did not dispute the Debt, listing it as "current and to be paid direct." On April 19, 1989, the Bankruptcy Court entered an order confirming the Chapter 13 Plan. The Order obligated Mr. Elliott to make 100% payment to all secured creditors. Moreover, on May 11, 1989, the Bankruptcy Court granted Mr. Elliott's motion for a Special Mortgage Order. The Order provided for 100% payment of the Debt, and required the trustee to make "current second mortgage payments" of $476.00 per month to ITT.

Some time after the second bankruptcy filing, the Elliotts became aware of their potential claims against ITT. Accordingly, on February 13, 1990, Mr. Elliott filed a lawsuit against ITT in the Circuit Court of Cook County, Illinois. He filed a class action challenging the legitimacy of debt on the ground that ITT violated the Illinois Interest Act by its use of the "Rule of 78's." On February 22, 1990, Mrs. Elliott filed this class action in the Cook County Circuit Court.[3] On April 16, 1990, Mr. Elliott amended his schedule of debts to indicate that the Debt was disputed. However, to avoid the risk of losing his home, he continued to pay the Debt while pursuing his claims against ITT.

In its answer and affirmative defenses to the present case, ITT asserted that under the doctrine of *res judicata*, the previous bankruptcy orders estopped the Elliotts

---

**3.** The case was removed to this Court on March 29, 1990.

from challenging the legality of the Debt. ITT also sought consolidation of the two law suits.

On August 17, 1990, the Elliotts moved to voluntarily dismiss the second bankruptcy proceeding. The court granted that motion, and on August 20, 1990, the Elliotts filed a third Chapter 13 petition, in which they disputed the amount owed to ITT. On November 19, 1990, the bankruptcy court entered an Order confirming the Chapter 13 Plan, again providing for payment of 100% of the Debt.

Mr. Elliott's class action against ITT did not fare well. Due to an adverse court ruling and passage of new legislation, Mr. Elliott's claim was effectively eliminated. Accordingly, he moved to voluntarily dismiss his complaint. On February 28, 1992, the court granted the motion and dismissed the claim with prejudice.

### III. Discussion

#### A. Class Certification and Leave to Amend

Plaintiffs' motions for class certification and leave to amend the complaint to add another named plaintiff were referred to Magistrate Judge Joan B. Gottschall. On November 10, 1992, Magistrate Judge Gottschall filed and served upon the parties her Report and Recommendation concerning plaintiffs' motion for class certification and for leave to amend the complaint to add another named plaintiff. Magistrate Judge Gottschall recommended that both motions be denied.

After careful consideration of the motions for certification and amendment, the applicable memoranda of law, other relevant pleadings, the record, the Magistrate Judge's Report, and the plaintiffs' and defendants' objections thereto, this Court hereby adopts Magistrate Judge Gottschall's Report and Recommendation on the plaintiffs' motions for class certification and amendment of the complaint. Accordingly, plaintiffs' and defendants' objections to the Magistrate Judge's Report are overruled, and, for the reasons set forth in the

Magistrate Judge's Report, plaintiffs' motions for class certification and for leave to amend the complaint are denied.

#### B. Summary Judgment

ITT claims that based on Elliott's Chapter 13 bankruptcy proceedings and her husband's dismissed state court case, her complaint is barred by *res judicata* and/or judicial estoppel. As discussed below, we do not agree.[4]

##### (i) Effect of Prior Bankruptcy Proceedings

##### (a) *Res Judicata*

■ The doctrine of *res judicata* "bars parties or their privies from litigating not only matters that in fact were raised and decided in an earlier suit involving the same cause of action and the same parties, but also all other matters that could have been raised in the earlier suit." *Hagee v. City of Evanston*, 729 F.2d 510, 512 (7th Cir.1984).

ITT argues that the Chapter 13 Confirmation and Special Mortgage Orders entered in the Elliotts' bankruptcy cases preclude subsequent lawsuits by Elliott regarding the underlying Debt. Moreover, defendants allege that because Elliott could have disputed the Debt at the confirmation hearing, she is now precluded from doing so. We disagree with these contentions.

■ First, underlying debts are not "confirmed" in a Chapter 13 plan. Instead, a Chapter 13 plan confirms the manner in which the debtor will discharge his financial obligations. In fact, several bankruptcy courts have expressly ruled that *res judicata* does not bar a debtor who has confirmed a Chapter 13 plan from objecting to claims under the Truth–In–Lending Act ("TILA"). *See In re Woolaghan*, 140 B.R. 377, 380 (Bankr.W.D.Pa.1992) (In a section headed "Debtors are not precluded from objecting to a claim after confirmation of the Chapter 13 plan," the court stated that "[t]his court believes that 'when confirmation of a plan does not purport to treat a specific creditor in a way such that its

---

**4.** American Bankers seeks to join ITT's motion for summary judgment, arguing that in is in privity with ITT for the purposes of *res judicata*.

Because we deny ITT's motion, we need not address this issue.

rights are determined and when determination of allowed claims is not necessary to a determination of whether the plan meets the standards of confirmation, confirmation is not an appropriate deadline for objection' to a claim.") citing 8 *Colliers*, § 3007.03 (15th Ed.); *In re Marshall*, 121 B.R. 814 (Bankr.C.D.Ill.1990) (holding that a TILA claim is not a compulsory counterclaim and is not barred by *res judicata* from being initiated after confirmation of a Chapter 13 plan). Accordingly, we do not find that Elliott is precluded from challenging the Debt by virtue of his prior bankruptcy proceedings.[5, 6]

■ Moreover, even if a confirmed Chapter 13 plan did bar challenges to the underlying claims, *res judicata* would not apply where the confirmed plan had been dismissed. Under Chapter 13, a debtor has an absolute right to dismiss the plan. 11 U.S.C. § 1307(b). Once a debtor dismisses the action, the confirmation of the plan is vacated and without *res judicata* effect. *See In re Nash*, 765 F.2d 1410, 1412–13 (9th Cir.1985) (debtors are not bound by the terms of a confirmed plan after dismissal); *In re Shaffer*, 48 B.R. 952 (Bankr.N.D.Ohio 1985) (unlike Chapter 11 proceedings, the rights of debtors and creditors are not fixed upon confirmation of the plan and *res judicata* should not apply where the debtor had the option of voluntarily dismissing their case). Here, the Elliotts voluntarily dismissed their second Chapter 13 plan. Accordingly, it no longer had any binding effect on either party and had no further *res judicata* effect.

### (b) Judicial Estoppel

■ Alternatively, defendants assert that Elliott's prior bankruptcy proceedings bar this suit under a theory of judicial estoppel. The doctrine of judicial estoppel precludes a party from taking a position in one proceeding that is inconsistent with a position s/he took, and prevailed upon, in earlier proceedings. *Eagle Foundation, Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir. 1987). ITT contends that because Elliott did not disclose her claim against ITT in her schedule of debts and assets, she should be barred by judicial estoppel from manipulating the courts and asserting such a claim now. This argument fails for several reasons.

First, it is not clear how Elliott's failure to disclose her potential "insurance packing" claim against ITT allowed her to "prevail" in the bankruptcy proceedings. If anything, that "position" hurt her financially, as her confirmed plan obligated her to pay 100% of the Debt.

Second, and most importantly, the doctrine of judicial estoppel is an equitable doctrine designed to prevent parties from "play[ing] fast and loose with the court." *Pako Corp. v. Citytrust*, 109 B.R. 368, 373 (D.Minn.1989). Here, ITT contends that Elliott failed to disclose and assert her claims against ITT in three separate bankruptcy proceedings. However, there is certainly a genuine issue of material fact as to whether the failure to list possible claims against ITT constituted a "position" for the purposes of judicial estoppel.

Here, there is evidence that Elliott did not intentionally omit her claim against ITT in the schedules of debts and assets. Elliott's 12(n) Statement, Exh. A at ¶ 5. She was simply unaware that they existed. *Id.* As soon as her attorney discovered the potential claims, the Elliotts amended their schedule of debts. Given these circumstances, judicial estoppel is inapplicable.

#### (ii) The Effect of the State Court Dismissal

■ Finally, ITT argues that the dismissal of Mr. Elliott's state court action

---

5. The special mortgage order did not pass upon the legitimacy of the Debt, but simply outlined the amount of the current mortgage payments to be made outside of the plan. Accordingly, it does not affect our finding.

6. Moreover, because Chapter 13 is a voluntary proceeding designed to expeditiously develop a plan for putting the debtor's fiscal house in order, there is little time for a debtor to thoroughly explore possible challenges to his underlying debts. *See In re Marshall*, 121 B.R. at 829. Because requiring full investigation and disclosure of possible claims would defeat the summary nature of Chapter 13, it would be inconsistent and inappropriate to give confirmation of a plan *res judicata* effect with respect to the underlying claims.

with prejudice bars the present suit under *res judicata.* A judicial decision is given *res judicata* effect when there is 1) a final judgment on the merits in the prior suit, 2) an identity of parties or their privies in the two suits, and 3) an identity of claims in the two suits. *Pirela v. Village of North Aurora,* 935 F.2d 909, 911 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991). However, generally the judgment in a class action, such as Mr. Elliott's, will only bind the members of the class with respect to the common issues adjudicated. *See Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 880–81, 104 S.Ct. 2794, 2802, 81 L.Ed.2d 718 (1984) (Court permitted members of class to litigate individual claims based on same events involved in class action where issues presented were distinct from those adjudicated in the class action); *Benton v. Smith,* 157 Ill.App.3d 847, 510 N.E.2d 952, 109 Ill.Dec. 884 (1st Dist.1987).[7]

Here, Mr. Elliott certified a class alleging that ITT violated an Illinois statute by using the so-called "Rule of 78's." That suit, which involved a class of plaintiffs affected by ITT's use of the "Rule of 78's," did not adjudicate the issues before the Court in the present action. Accordingly, *res judicata* does not bar Elliott's claim.

### IV. Conclusion

For the foregoing reasons, we overrule plaintiffs' and defendants' objections to the Magistrate Judge's Report and Recommendation, deny plaintiffs' motions for class certification and for leave to file an amended complaint and deny defendants' motion for summary judgment. It is so ordered.

---

**7.** The *Benton* court stated as follows:

We also find that *res judicata* would not bar this action because the issues here could not have been raised in the earlier action. Under defendants' theory, each member of the [ ] class should have been required to intervene to litigate the merits of any individual property claims that might have arisen during the relevant period. Class actions are meant to determine common questions. The introduction of individual property damage claims arising during the same period of time could defeat this purpose and make the class unmanageable.

*Id.* 510 N.E.2d at 957, 109 Ill.Dec. at 889.