HEXACOMB CORPORATION, Plaintiff-Appellant, v. CORRUGATED SYSTEMS, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—96—2021

Opinion filed March 31, 1997.

---

Arne M. Olson and Daniel J. Deneufbourg, both of Olson & Hierl, Ltd., of Chicago, for appellant.

Bruce J. Van Heukelem and Brian L. Dobben, both of Hoogendoorn, Talbot, Davids, Godfrey & Milligan, of Chicago, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff Hexacomb Corporation (Hexacomb) filed suit seeking preliminary and permanent injunctive relief and replevin for misappropriation of trade secrets and tortious interference with a contractual and business relationship against defendants Corrugated Systems, Inc. (Corrugated), Honeycomb Products Corporation (Honeycomb), and David F. McCarthy (McCarthy). This action fol-

lowed the conclusion of an action brought by Hexacomb in United States District Court.

Plaintiff appeals from an order in which the trial court dismissed its suit against defendants, denied its motion for summary judgment, and granted defendants' motion for summary judgment. On appeal, plaintiff contends that: (1) the circuit court erred in granting summary judgment for defendants based on the doctrine of collateral estoppel, and (2) the circuit court erred in dismissing all three counts of the complaint against all three of the defendants.

BACKGROUND

Hexacomb is an Illinois corporation in the business of selling honeycomb paper products. One of the honeycomb products manufactured by plaintiff is a double-faced sandwich panel made of a paper honeycomb core. The paper honeycomb core is made on a core-making machine designed and manufactured by plaintiff. The core-making machine is a large machine that is 70 to 80 feet long, about 12 feet tall and 10 feet across.

From 1972 to May 7, 1992, plaintiff employed George T. Wroblewski, Sr. (George Sr.), as its maintenance supervisor. George Sr. was responsible for, among other things, designing and building plaintiff's core-making machines. From 1979 to May 1992, plaintiff also employed George Sr.'s son, George Wroblewski, Jr. (George Jr.), who also worked in plaintiff's maintenance department and performed maintenance on plaintiff's core-making machines.

In or about September 1986, plaintiff employed defendant David F. McCarthy (McCarthy) as plaintiff's director of sales. In April 1992, George Sr. left plaintiff to start GTW Enterprises, Inc. (GTW). Shortly thereafter, George Jr. and Andrew Wroblewski, another one of George's sons, left plaintiff and joined GTW. In or about September 1992, plaintiff terminated McCarthy.

In or about January 1993, McCarthy contacted American Honeycomb, Inc. (American Honeycomb), a third company, to ascertain whether it might be interested in purchasing a core-making machine and a panel line from GTW. In February 1993, McCarthy entered into negotiations with GTW for the purpose of purchasing a core-making machine and panel line from GTW for American Honeycomb. Plaintiff discovered that George Sr. was building core-making machines at GTW, and on May 24, 1993, filed suit against George Sr. and GTW in the United States District Court for alleged misappropriation of plaintiff's trade secrets. Plaintiff also moved for a preliminary injunction and temporary restraining order to prevent George Sr. and GTW from building and selling core-making machines. After a hearing, plaintiff's motion was denied on May 25, 1993.

Meanwhile, sometime during the summer of 1993, McCarthy contacted defendant Corrugated to ascertain whether Corrugated might be interested in purchasing a core-making machine and panel line from GTW. McCarthy then contacted George Sr. to obtain a quote for the construction of a core-making machine and panel line for Corrugated. On August 23, 1993, Corrugated submitted a purchase order to GTW for a core-making machine and panel line along with a $50,000 deposit check.

Plaintiff continued to pursue preliminary injunctive relief against George Sr. and GTW. Following a seven-day hearing, the federal court denied plaintiff's motion for preliminary injunctive relief on September 8, 1993. The court denied plaintiff's motion because it found that plaintiff had failed to reasonably protect its secret as required by the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.* (West 1992)). However, subsequent to that ruling, plaintiff located a series of confidentiality agreements executed by George Sr. while employed by plaintiff's predecessor companies. Based on this evidence, the court reversed its previous ruling and granted plaintiff's motion for preliminary injunctive relief. On October 8, 1993, the federal court orally informed counsel for the parties that it was granting plaintiff a preliminary injunction against George Sr. and GTW.

In October 1993, McCarthy, along with several officers from Corrugated, incorporated defendant Honeycomb Products Corporation (Honeycomb), for the purpose of selling honeycomb paper products. Honeycomb Products operates out of the same location as Corrugated and is owned by David F. McCarthy, Tom Hamilton, Corrugated's vice-president; Robert Sisco, Corrugated's president; Thomas Ottenhoff, Corrugated's accountant; and Bill Bontekoe.

In mid October 1993, George Sr. contacted Tom Hamilton at Corrugated and told him that GTW could not finish the core-making machine in time because of the litigation with plaintiff. At about that time, George Jr. and other GTW employees then went to work for Corrugated and commenced building a core machine for Corrugated.

On October 28, 1993, the federal court entered its order granting plaintiff's preliminary injunction, which prohibited GTW from building or selling only core-making machines.

In November 1993, George Jr., Andrew Wroblewski, and three other GTW employees were released from GTW and immediately hired by Corrugated to complete the core-making machine that GTW had been building for Corrugated. In addition, GTW sold to Corrugated the parts that GTW had ordered to build Corrugated's core-making machine.

In January 1994, plaintiff put Corrugated and McCarthy on no-

tice of the federal action and October 28, 1993, preliminary injunction. On February 1, 1994, plaintiff filed a motion for a rule to show cause why GTW, George Sr., George Jr., Andrew Wroblewski and Corrugated should not be held in contempt of the October 28, 1993, preliminary injunction order. On February 2, 1994, an order to show cause was issued. On May 6, 1994, Corrugated filed a motion to intervene as a defendant to contest the contempt order to show cause. In the summer of 1994, the federal court held a hearing to determine the issue of contempt.

The record before this court includes only portions of relevant transcripts, thus preventing this court from reviewing the entire context of many statements. However, the portions that are included in the record reveal that, during the hearing on the issue of contempt, the federal court repeatedly defined the issue to be determined at the hearing as whether George Sr., George Jr. and Corrugated acted in concert to violate the preliminary injunction. At the outset of the hearing on May 25, 1994, the federal district court stated in pertinent part:

"[W]e are not trying today whether or not the Court was right or wrong when I found that this was a unique machine that was a trade secret. I believe it is despite your questions and despite George's answers right now to it. The issue is whether or not in any way Corrugated's use of these few parts and the employees that came over from George, Sr., violated my order directed towards George, Sr., and those acting in concert with him ***."

In addition, on June 3, 1994, the federal court stated in pertinent part:

"But I want to make one point though. It is very important that you understand that the legal issue before the Court is whether or not any of these respondents acted in concert with the named parties who were enjoined by this Court. And you are not being compelled to relitigate the nature of whether or not this is a trade secret. *** What you need to persuade me of is that George Jr., Corrugated, and these other people, acted in concert with George Sr. And that's, that's the issue. *** Despite questions by opposing counsel that might go to the issue of whether or not this is a trade secret, you know, I've resolved that for purposes of the preliminary injunction, and you need not relitigate that here."

On July 19, 1994, the federal court held that GTW, George Sr., George Jr., Andrew Wroblewski and Corrugated were not in contempt of the October 28, 1993, preliminary injunction because George Jr., Andrew Wroblewski and Corrugated had not acted in concert with GTW and George Sr. to violate the injunction. The court advised all the parties to return for a hearing to clarify their respective positions.

On August 17, 1994, the federal court held a final status hearing in the matter. At the hearing, plaintiff attempted to join Corrugated as a defendant in the continuing matter. The following colloquy took place:

"THE COURT: Where is Corrugated located?

MR. VAN HEUKELEM [counsel for Corrugated]: Right here in Illinois, your Honor.

THE COURT: Does that destroy diversity?

MR. VAN HEUKELEM: It is our position that it will once we have allegations in the form of a lawsuit brought against us. \*\*\*

THE COURT: I am inclined to agree. So, you know, if you want them in, then maybe you are not in this Court.

\* \* \*

THE COURT: I believe that Corrugated intervened in order to expedite the hearing that we had on the rule to show cause on the contempt order. I am not inclined to force them to stay in beyond their victory in that particular proceeding. So what I am going to do is I am going to declare that they are not in the lawsuit. They were never actually named as a defendant. \*\*\* So as of this instant Corrugated is out of the lawsuit. Now if you want them in, you can file a motion to file an amended complaint or add them as a party defendant, but then you are going to have some diversity questions that are fairly serious, I think \*\*\*."

Thereafter, plaintiff negotiated a settlement with GTW and the Wroblewski family. On December 29, 1994, a consent judgment and order was entered in which GTW, George Sr., George Jr., and Andrew Wroblewski, *inter alia*, were permanently enjoined from using any core-making machine whose design is based in whole or in part on the design of plaintiff's core-making machines. On January 12, 1995, plaintiff filed a complaint against defendants Corrugated, Honeycomb and David F. McCarthy in the circuit court of Cook County alleging misappropriation of trade secrets, tortious interference with a contractual and business relationship and replevin. On February 13, 1996, plaintiff filed a motion for summary judgment alleging that defendants were bound to the consent judgment and the preliminary injunction entered in the federal action. Plaintiff also argued that, under the doctrine of collateral estoppel, plaintiff was entitled to summary judgment on issues that had been previously litigated and adjudicated in plaintiff's favor, including the findings that plaintiff's core-making machine is a trade secret and that defendants' machine is substantially identical in design to plaintiff's machine.

Defendants filed a cross-motion for summary judgment and argued that plaintiff was collaterally estopped from relitigating issues that had already been decided in defendants' favor in federal

court. In particular, defendants argued that they were entitled to summary judgment because the federal court had already determined that plaintiff had failed to reasonably protect its trade secret by failing to obtain confidentiality agreements from its employees.

On May 6, 1996, after a hearing, the circuit court granted defendants' motion and dismissed all three counts of plaintiff's complaint. The court ruled that plaintiff could not assert the doctrine of *res judicata* or collateral estoppel on the basis of a consent judgment that did not involve the defendants. The court also held that the August 17, 1994, order, in which the federal court dismissed Corrugated as a party, was an adjudication on the merits under Federal Rule of Civil Procedure 41(b) (Fed. R. Civ. P. 41(b)), which precluded plaintiff from relitigating allegations of misappropriation. Finally, the circuit court held that the issue of whether plaintiff's core-making machine was a trade secret had already been litigated and judicially decided against plaintiff and in favor of the defendants. The court stated in pertinent part:

> "Accordingly, Hexacomb cannot seek to re-litigate whether Corrugated and its privies, Honey Comb [*sic*] and McCarthy should then be subject to an injunction or again be accused of misappropriating a trade secret. Those issues have already been victoriously litigated between the same parties or their privies and determined conclusively on the merits."

The circuit court then granted defendants' motion for summary judgment. This appeal followed with a request to vacate the circuit court's May 6, 1996, order and reinstate all counts of plaintiff's complaint.

ANALYSIS

I

Plaintiff contends that the federal court dismissed Corrugated for lack of jurisdiction and that, therefore, the circuit court erroneously found that the federal court's finding in its August 17, 1994, order was an adjudication on the merits that collaterally estops this action, because under Federal Rule of Civil Procedure 41(b) (Fed. R. Civ. P. 41(b)) a dismissal for lack of jurisdiction is not an adjudication on the merits.

Defendants respond that the August 17, 1994, order was an adjudication on the merits because the federal court dismissed Corrugated, not for lack of jurisdiction, but because Corrugated had already gained a victory over Hexacomb on the merits during the July 19, 1994, contempt hearing.

Plaintiff further contends that the circuit court erred in dismissing its complaint against defendants. Count I of plaintiff's complaint

asserts a cause of action for misappropriation of trade secrets against the defendants under Illinois common law and the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.* (West 1992)). Count II of plaintiff's complaint states a cause of action for tortious interference with a contractual and business relationship. Plaintiff argues that these counts are premised upon David McCarthy's execution and alleged breach of his confidentiality agreement as a Hexacomb employee and upon defendants' inducement of George Sr. and George Jr. to breach their respective duties of confidentiality owed to plaintiff primarily through David McCarthy's negotiation of the sale of a core-making machine to American Honeycomb. Plaintiff also argues that the circuit court erred in dismissing these counts because David McCarthy was neither a party in the federal action nor a privy of any party in the federal action and that the proceedings in federal court, inasmuch as they related to Corrugated, only determined that Corrugated did not conspire with GTW to violate the preliminary injunction.

Defendants respond that plaintiff's claims are barred because the federal court concluded: that Corrugated and its privies obtained a core machine by building it rather than by obtaining it from George Sr. or his company; that George Jr. owed no duty of confidentiality to Hexacomb and was therefore free to use his knowledge to build a core machine for Corrugated; and that Hexacomb had no trade secret right in its core machines because it failed to protect it. In sum, defendants claim that these rulings collaterally estop plaintiff from now bringing suit in state court against Corrugated.

After reviewing all of the parties' contentions on appeal, it is our view that the central and dispositive issue in this case is whether collateral estoppel precludes plaintiff from pursuing its claims against the defendants in the current action. In our view, the factual findings made in the federal action that were material and controlling in that case are neither material nor controlling in the current case. Therefore, the findings rendered in the federal action do not collaterally estop plaintiff's claims in the current action.

■ There appeared to have been some confusion during oral argument about the doctrines of *res judicata* and collateral estoppel. The doctrine of *res judicata*, also referred to as estoppel by judgment, provides that a final judgment rendered by a court of competent jurisdiction in a previous action between the parties bars a subsequent action between those parties on the same claim or cause of action. *Decatur Housing Authority v. Christy-Foltz, Inc.*, 117 Ill. App. 3d 1077, 1080, 454 N.E.2d 379 (1983); *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 251, 461 N.E.2d 959 (1984); *Redfern v. Sul-*

*livan*, 111 Ill. App. 3d 372, 375, 444 N.E.2d 205 (1982). Under the doctrine of *res judicata*, a judgment may be asserted to bar a second action where the parties and the causes of action are identical. *Decatur Housing Authority*, 117 Ill. App. 3d at 1081. Causes are identical for purposes of *res judicata* where the evidence necessary to sustain the second verdict would have sustained the first. *Cangas v. Marcus Auto Lease Corp.*, 176 Ill. App. 3d 127, 130, 530 N.E.2d 1101 (1988); *Palya v. Palya*, 87 Ill. App. 3d 472, 475, 409 N.E.2d 133 (1980).

■ The doctrine of collateral estoppel, also referred to as estoppel by verdict, arises under different circumstances. Collateral estoppel applies when a party participates in two separate and consecutive cases arising from different causes of action. The parties are precluded from relitigating an issue in the subsequent proceeding where that issue was actually or necessarily decided by a court of competent jurisdiction in the earlier proceeding. *Cangas*, 176 Ill. App. 3d at 130; *Housing Authority*, 101 Ill. 2d at 251; see also *Benton v. Smith*, 157 Ill. App. 3d 847, 853, 510 N.E.2d 952 (1987). Collateral estoppel bars subsequent actions only as to the point or question *actually* litigated and determined in the prior suit and not as to matters that *might* have been litigated and determined. *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 252, 461 N.E.2d 959 (1984). In order for a previous judgment to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the previous action. *Benton*, 157 Ill. App. 3d at 853. It is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the subsequent case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily decided by the court rendering the prior judgment. *Cangas*, 176 Ill. App. 3d at 131. The party asserting the preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment. *Benton*, 157 Ill. App. 3d at 853. This is a heavy burden of proof. *Benton*, 157 Ill. App. 3d at 853; see also *Gale v. Transamerica Corp.*, 65 Ill. App. 3d 553, 558, 382 N.E.2d 412 (1978). If there is any uncertainty on the point, and more than one distinct issue of fact was presented to the court, collateral estoppel will not be applied because the court may have decided the case upon one of the other issues of fact. *Lange v. Coca-Cola Bottling Co. of Chicago, Inc.*, 44 Ill. 2d 73, 75, 254 N.E.2d 467 (1969).

■ The doctrine of *res judicata* is inapplicable to the instant case. Plaintiff's cause of action is not identical to the action in the federal court. Plaintiff's claim in the federal action was based primarily upon the conduct of George Sr. and his duty of confidentiality to

plaintiff, whereas, in the instant case, plaintiff's claim is based upon the conduct of entirely different parties.

Relative to collateral estoppel our supreme court has set forth the minimum threshold elements that must be satisfied before the circuit court may conclude that a prior adjudication precludes litigation of an issue in the case before it: (1) the issue decided in the prior suit is identical to the one presented in the pending suit; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was either a party or in privity with a party in the prior lawsuit. *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill. 2d 1, 7, 398 N.E.2d 9 (1979); *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 461, 672 N.E.2d 1149 (1996).

In our view, the material issues of fact underlying plaintiff's current claims were not adjudicated in federal court and the issues that were decided in the prior suit are not identical to the issues presented in the current suit.

The federal court reiterated several times during the contempt proceedings that the issue to be resolved was whether the parties acted in concert to violate the preliminary injunction. For example, at one point during the proceedings, the federal court stated:

"Well, this is not, this is not a lawsuit against Corrugated to determine whether or not you have a trade secret that belongs to Hexacomb. I believe that the six-roll machine is different enough from the prior machines so that it rises to the level of being a trade secret if it is properly protected by the entity that develops it. But that's not the issue here. The issue here is whether or not Junior acted in concert with Senior, who's enjoined from producing the six-roll machines. *** You are not a defendant. You are a respondent on a petition for a rule to show cause. And the issue here is: Was your client acting in concert with George, Sr. in violation of the Court's order."

Thus, the hearing on plaintiff's rule to show cause was never presented or framed as a suit seeking relief from Corrugated or as a suit to determine whether Hexacomb had a trade secret relative to Corrugated. Although the federal court did not issue specific findings from its ruling on plaintiff's motion for a rule to show cause, we believe that the court's conclusions were, nevertheless, quite narrow in scope. The federal court held that there was no conspiracy between George Sr. and Corrugated and stated: "So I am going to find that there—that there is no conspiracy between George, Sr. and Corrugated."

In support of their argument that the federal court did determine

that Corrugated could lawfully use the core machine it had built without violating any trade secret right of plaintiff, defendants point to, *inter alia*, the following statements made by the federal court during the contempt hearing:

> "But basically, when I held that they were not entitled to protection vis-a-vis George, Sr., that was on the basis that I said that while they had a machine that was worthy of being a trade secret, they had not adequately tried to protect it. \*\*\* And so the really exciting thing about the case we have today is that obviously they don't have one [trade secret] with George, Jr., who also worked there. But then he went and worked for George, Sr. If George, Jr., had gone off on his own and started doing that George Sr., did, we probably wouldn't be here today."

We recognize that the court appeared to believe that plaintiff did not have a trade secret as to George Jr. However, the issue of whether plaintiff's core-making machine was a trade secret was not an issue in the contempt proceeding and, therefore, could not have been central to the court's ruling on the contempt issue. The court's comments cannot be characterized as conclusive findings and can be viewed only as *dicta*. The parties cannot, therefore, be precluded from litigating the issues of plaintiff's trade secrets against the current defendants since those issues were clearly not decided by the federal court.

We also recognize that there are overlapping issues between the current and prior causes of action. Plaintiff's allegations regarding McCarthy's purchase of the core-making machine from GTW arise out of the same core of facts that led to the federal court's previous determination that there was no concerted action between Corrugated and George Sr. However, the overlap in allegations is inconsequential; two causes of action are not necessarily the same merely because they arise out of the same set of facts. *Fountas v. Breed*, 118 Ill. App. 3d 669, 672, 455 N.E.2d 200 (1983). Mere similarity in pleading does not determine the issue of collateral estoppel. *Benton*, 157 Ill. App. 3d at 853.

In our view, defendants have not sustained their burden of proving with certainty and clarity that the present action is barred by the federal action.

## II

■ Plaintiff also argues that the circuit court erred in dismissing count I of the complaint against all of the defendants because count I was premised, not only upon defendants' misappropriation of plaintiff's core-making machines, but also upon defendants' misappropriation of another of plaintiff's machines referred to in the com-

plaint as a "panel line." Defendant responds that plaintiff is barred by waiver, *laches* and collateral estoppel from advancing claims for replevin over Corrugated's panel line because Hexacomb never pursued such a claim against anyone in the federal action and the claim is not apparent anywhere in its complaint here. We disagree. Our review of the record reveals that plaintiff's current allegations regarding the "panel line" were included in the complaint that was before the circuit court and are, therefore, properly before this court.

For the foregoing reasons, the judgments of the trial court are vacated. We reinstate plaintiff's complaint in its entirety and the cause is remanded for further proceedings consistent with this decision.

Vacated and remanded.

GORDON and LEAVITT, JJ., concur.