In re DEER CREEK PRODUCTS,
INC. Debtor.

Marika Tolz, Trustee, Appellant,

v.

Quad/Graphics, Inc., Appellee.

No. 05–60017–CIV–COHN.

United States District Court,
S.D. Florida,

May 3, 2005.

914

Marie L. Nienhuis, Arthur Jay Spector, Berger Singerman, Fort Lauderdale, FL, Adam David Marshall, McDonald Hopkins Co PA, West Palm Beach, FL, for Appellee.

## ORDER AFFIRMING BANKRUPTCY COURT ORDER

COHN, District Judge.

This appeal arises from the Bankruptcy Court's Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment, and the Opinion thereon. [DE # 2 Ex. A]. The Court has carefully reviewed the Initial Brief of Appellant Marika Tolz, Bankruptcy Trustee (the "Trustee") [DE # 3]. the Initial Brief of Appellee Quad/Graphics, Inc. ("Quad") [DE # 4], the Reply Brief of the Trustee [DE # 5], and is otherwise fully advised in the premises.[1]

### I. BACKGROUND

On September 27, 2002, Deer Creek Products, Inc., (the "Debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Code"). The case was converted to Chapter 7 on August 23, 2003. Thereafter, the Trustee was appointed to administer the assets in this case. The Debtor was, at all relevant times, engaged in the direct-mail marketing business in Pompano, Beach, Florida. Quad performed printing services for the Debtor by printing its catalogs pursuant to an agreement between the parties.[2] The catalogs were printed at

1. Neither party has requested oral argument.

2. The agreement was entered into by the parties on July 2, 2002, and revised on July 22, 2002.

Quad's Georgia plant.

On July 22, 2002, Quad issued Invoice No. 734528, for the paper to be used for the catalogs, in the amount of $67,855.55. The Debtor paid Invoice No. 734528 by two wire transfers: (1) on July 23, 2002, the Debtor wire transferred $34,200.00; and (2) on July 30, 2002, the Debtor wire transferred $33,655.55.

On July 11, 2002, Quad issued Invoice No. 733796 for the printing of the catalogs, in the amount of $66,251.74. The Debtor transferred, and Quad received, check no. 10113 in the amount of $66,251.74. On August 2, 2002, Quad printed 665,000 catalogs at its printing facility in Georgia using the paper previously paid for by the Debtor. On or about August 3, 2002, Quad was informed that check no. 10113 was being returned for insufficient funds. Thereafter, on August 29, 2002, the Debtor wire transferred $22,251.74 as a partial repayment to Quad to replace the returned check (the "Transfer").

On February 2, 2004, the Trustee filed an action against Quad. The Trustee sought to set aside the allegedly preferential Transfer. On November 24, 2004, the Bankruptcy Court issued its Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment, and the Opinion thereon.

## II. TRUSTEE'S ISSUES RAISED ON APPEAL

The Trustee raises two issues on appeal: (1) Whether the Bankruptcy Court erred as a matter of law in its application of the jurisdiction of the choice of laws; and (2) Whether the Bankruptcy Court erred as a matter of law in determining that a bailment existed.

## III. STANDARD OF REVIEW

■ This Court reviews the Bankruptcy Court's legal determinations *de novo* and its factual findings for clear error. *See In re Intern. Management Assoc.*, 399 F.3d 1288, 1291 (11th Cir.2005).

## IV. ANALYSIS

### A. Choice of Law

At issue before the Bankruptcy Court was whether to apply Florida or Georgia law. The Bankruptcy Court relied on Restatement (Second) Conflicts of Law (1971) § 251 to determine which state's law to apply, and found that Georgia had the most significant relationship to the catalogs at the time they were printed and that the law of Georgia should apply in determining whether Quad had a valid lien.

On Appeal, the Trustee argues that the Bankruptcy Court incorrectly found that Georgia law governs. The Trustee states that because the July 2, 2002 letter agreement between the parties did not have a choice of law clause, state law governs. Trustee argues that a federal court applies the choice of law doctrine in the forum state in which it sits, and that in this case Florida is the forum state. Moreover, Trustee avers that the revision to the agreement was prepared at Quad's office located at 1541 Snapdragon Drive, West Palm Beach, Florida, on its Florida letterhead. Trustee states that the revision also does not have a choice of law clause. Quad maintains that it agrees with Trustee that a federal court should apply the choice of law doctrine applied by the forum state in which it sits. It states that the Bankruptcy Court correctly looked to Florida's choice of law rules to determine whether Florida or Georgia law on possessory liens should be applied, and correctly found that Georgia law should apply to the determination of whether Quad held a val-

id lien at the time that it received the Transfer.

■ Although the Bankruptcy Court was required to apply federal law for the bankruptcy issues in this case, reference to state law was required to determine the issues relating to whether Quad had a lien. *See In re Washington,* 242 F.3d 1320, 1322 (11th Cir.2001) (*citing In re Hagen,* 922 F.2d 742, 744 n. 2 (11th Cir.1991)). The Court notes that either Florida or Georgia law may be applicable in this case. Thus, the Court must perform a choice of law analysis to determine which state's law to apply.

■ In making the conflict of laws inquiry, the Court must first ascertain the nature of the problem involved, and then determine the choice of law rule that the state applies to that legal issue. *See Garcia v. Public Health Trust of Dade County,* 841 F.2d 1062, 1064 (11th Cir.1988) (*citing Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1538 (11th Cir.1983)). Here, the legal issue before the Bankruptcy Court was whether Quad held a lien on the catalogs in its possession at the time that Invoice # 733796 was paid by wire transfer. This Court is obligated to follow Florida's choice of law rule. *See In re World Vision Entertainment, Inc.,* 275 B.R. 641, 661 (Bankr.M.D.Fla.2002) (*citing Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co.,* 944 F.2d 809, 812 (11th Cir. 1991)); *In re Gillette,* 248 B.R. 845, 849 (Bankr.M.D.Fla.1999); *In re Davis,* 99 B.R. 95, 96 (Bankr.M.D.Fla.1989). However, the Court is not compelled to follow Florida substantive law if its choice of law analysis determines that Georgia substantive law should apply.

Florida does not have a "statutory directive" on choice of law. *See Digioia,* 944 F.2d at 812. Instead, Florida courts look to the Restatement (Second) Conflict of Laws to determine which law to apply. *See In re World Vision,* 275 B.R. at 661 (*citing Digioia,* 944 F.2d at 812).

■ This Court is in agreement with the Bankruptcy Court that Restatement (Second) Conflict of Laws § 251 was the appropriate section of the Restatement for the Court to utilize in its conflict of laws analysis.[3] Section 251 pertains to security interests in chattels. It provides:

(1) The validity and effect of a security interest in a chattel as between the immediate parties are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the security interest under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel at the time that the security interest attached than to any other contact in determining the state of the applicable law.

■ Here, the paper on which the catalogs were printed was purchased from Quad in Georgia, the paper was maintained at Quad's Georgia facility, the catalogs were printed in Georgia, and following the completion of the printing, the catalogs were kept by Quad in Georgia until the time that they were shipped post-petition. Given these facts, Georgia had the most significant relationship with the catalogs and the greatest interest in whether they were encumbered by a lien. Thus, the

---

**3.** The Court notes that Quad accepts that § 251 was the appropriate section of Restatement (Second) Conflict of Laws for the Bank-

ruptcy Court to rely upon, and Trustee does not submit an alternative Restatement section for the Court to consider.

Bankruptcy Court correctly determined that Georgia law applies here.

## B. *Bailment*

 The Bankruptcy Court found that Quad was a bailee who acquired a security interest in goods in its possession. Therefore, Quad was a bailee with a valid statutory lien on the printed catalogs under Ga.Code Ann. § 44–14–409.

The Trustee argues that a bailment cannot exist, as the revision of July 22, 2002 called for Quad to supply the paper for the printing of the job. The Trustee states that this revision clearly takes the transaction outside of a bailment as Quad was not holding anything of the Debtor's except for the finished product that "Quad prepared on paper supplied by Quad." It contends that the transaction between the Debtor and Quad was a purchase of printed catalogues and Quad "was nothing other than a general unsecured creditor as a supplier of a product to the Debtor." Quad argues that the Bankruptcy Court's holding should be affirmed.

Ga.Code Ann. § 44–14–409 provides:

The bailee for hire of labor and service shall have a special lien for his labor and services upon the thing bailed until he parts with possession; and, if he delivers up a part of the thing bailed, the lien shall attach to the remainder in his possession for the entire claim under the same contract.

Ga.Code Ann. § 44–14–409

In addition, Georgia law defines a bailment as:

a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both

and to dispose of the property in conformity with the purpose of the trust.

Ga.Code. Ann. § 44–12–40.

 Here, the Debtor became the owner of the paper used to print the catalogs when the invoice for purchase of the paper was paid in full. *See Wade–Corry Co. v. Moseley*, 223 Ga. 474, 156 S.E.2d 64 (1967). The Debtor purchased the paper by making two wire transfer payments to pay Invoice No. 734528. This payment was made before the printing project commenced, so when Quad began printing the catalogs, the Debtor owned the paper. The source of the paper is not dispositive. Instead, what is relevant is that the Debtor owned the paper at the time that the printing was performed and that the Debtor paid for the paper prior to printing. The element of constructive delivery for a bailment therefore occurred before the printing commenced.

## V. *CONCLUSION*

Based on the foregoing, the Court finds no error in the Bankruptcy Court's orders. Accordingly, the Bankruptcy Court's Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment, and the Opinion thereon, are hereby **AFFIRMED**. The Clerk shall **CLOSE THIS CASE**.