In re: George Edward CASSIDY,
M.D., Debtor

Advanced Imaging Center of Northern
Illinois Limited Partnership, an Illi-
nois Limited Partnership. Plaintiff

v.

George Edward Cassidy,
M.D. Defendant

Spiro Gerolimatos, M.D. Plaintiff

v.

George Edward Cassidy,
M.D. Defendant.

Bankruptcy No. 9:05BK27075 ALP.
Adversary Nos. 06–14, 06–23.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Aug. 18, 2006.

Harley E. Riedel, Stichter, Riedel, Blain and Prosser, Tampa, FL, for Debtor.

**ORDER ON MOTIONS FOR JUDG-MENT ON PLEADINGS (Adv. Pro.06–14, Doc. No. 9) (Adv.Pro.06–23, Doc. No. 8) and DEFENDANT DEBTOR'S MOTIONS FOR SUMMARY JUDGMENT (Adv.Pro.06–14, Doc. No. 18) (Adv.Pro.06–23, Doc. No. 16)**

ALEXANDER L. PASKAY, Bankruptcy Judge.

The Matters under consideration in this yet-to-be confirmed Chapter 11 case are claims of nondischargeability of debts admittedly owed to Advanced Imaging Center of Northern Illinois, LP (AIC) and Dr. Spiro Gerolimatos (Dr. Gerolimatos) by Dr. George Edward Cassidy (the Debtor). The claims of nondischargeability were asserted in Adversary Proceeding No. 06–00014 filed by AIC and Adversary Proceeding No. 06–00023 by Dr. Gerolimatos. The immediate matters before this Court are two Motions for Judgment on the Pleadings filed by AIC and Dr. Gerolimatos, and the Debtor's Cross Motions for Summary Judgment in each adversary proceeding. It is the contention of AIC and Dr. Gerolimatos that the issues relevant to their claims have been fully determined adversely to the Debtor prior to the commencement of this Chapter 11 case and, therefore, based on the doctrine of collateral estoppel, the Debtor should not be permitted to litigate these issues in the Bankruptcy Court.

The facts as appear from the record and relevant to the issues raised are without dispute and can be summarized as follows:

AIC is a limited partnership formed in 1991. Beginning in 1992, AIC began operating a free-standing imaging facility in Crystal Lake, IL, providing various imaging services, including MRI's, mammograms, ultrasound examinations, and bone marrow density testing. Centegra Health Systems (Centegra) is an Illinois not-for-profit corporation which operates two full service, acute care hospitals in the suburbs of Northern Chicago. In 1996 Centegra acquired an interest in AIC and became a general partner of AIC along with CCG Corporation, an Illinois corporation owned by Dr. Gerolimatos and the Debtor.

The Debtor is a radiologist and also holds an MBA degree from Northwestern University. Between 1997 and 2003 the Debtor was involved and held an ownership interest in the development and/or management of at least 12 operating or planned imaging centers in the Northwest suburbs of Chicago. Among the several imaging centers the Debtor held a 2% interest in AIC. In addition, the Debtor indirectly controlled additional units in AIC through two entities: CCG and Diagnostic Imaging Services, Inc. (DIS). In early 2000 after some questions were raised concerning an alleged inappropriate use of funds of AIC, CCG was removed as the Managing Partner and was replaced by Centegra. Centegra continues to serve as the managing partner of AIC.

In August 2000, AIC filed a three-count complaint in the Circuit Court of the 19th Judicial Circuit, McHenry County, Illinois—Law Division (the McHenry County Court). In its original complaint, AIC asserted claims for breach of fiduciary duty, conversion, unjust enrichment against the Debtor, DIS, and others. On February 5, 2001, AIC filed its amended fifteen-count Complaint against the Debtor seeking to recover damages for breach of fiduciary duty, fraud, conversion, and civil conspiracy. In its prayer for relief AIC sought entry of a judgment for actual damages, in an amount to be determined, at least in excess of one million dollars, and punitive damages with respect to one claim, plus attorney's fees and costs incurred in bringing the lawsuit. In due course, the defen-

dant in each adversary proceeding filed his Motion to Dismiss the Amended Complaint.

On May 29, 2003, prior to the McHenry County Court's ruling on the Motion to Dismiss, all parties agreed to submit all matters, whether pending, raised or to be raised in the future to binding arbitration. Thereafter, all the cases pending between the parties were consolidated for the purpose of binding arbitration.

After the parties had agreed on the Arbitrator, retired judge Thomas Durkin, the arbitration commenced on September 22, 2003 and was concluded October 6, 2003. On December 5, 2003, the Arbitrator issued his sixteen page decision on all the matters that were pending before the McHenry Count Court and directed the prevailing parties to submit within thirty (30) days a judgment order to be presented to the court. On December 19, 2003, AIC, Dr. Gerolimatos and the remaining defendants submitted their proposed judgment order to the Arbitrator. Soon thereafter, the Debtor and DIS objected to the proposed judgment order and moved to vacate or modify the award.

On January 5, 2004, a hearing was held and on January 10, 2004, the Arbitrator vacated a portion of the award and signed the Order Approving the Proposed Judgment. On January 12, 2004, AIC, Dr. Gerolimatos and Centegra filed a Joint Motion to confirm the Arbitration Award. On January 27, 2004, the Debtor and DIS moved to modify, correct or vacate the award.

On April 27, 2004, the McHenry County Court confirmed the Arbitration Award which awarded accrued interest and also post-judgment interest on the principal amounts. The McHenry County Court entered its judgment on the Arbitration Award in the total amount of $1,446,829.10. The Debtor and DIS filed a notice of appeal challenging the judgment entered by the McHenry County Court which approved the findings of the Arbitrator. On June 14, 2005, the Appellate Court of Illinois entered its Order affirming the McHenry County Court's Judgment that confirmed the Arbitration Award and modified the Judgment to provide for statutory interest on the entire judgment amount, including post-award interest.

On October 14, 2005, the Debtor filed his Petition for Relief under Chapter 11 of the Bankruptcy Code which immediately stopped any proceedings in the Illinois litigation. AIC and Dr. Gerolimatos each filed their above-captioned adversary proceedings.

In its Complaint, AIC set forth three separate claims in three Counts. The claim in Count 1 was based on the allegation that the Debtor engaged in fraud in connection with the management of AIC and that Debtor's false pretenses, false representations, and/or actual fraud proximately caused AIC's injuries in the amount of $1,446,829.10. Therefore, pursuant to Section 523(a)(2)(A), the debt should be declared to be nondischargeable. The claim in Count II alleges that the Debtor (1) engaged in fraud or defalcation while acting in a fiduciary capacity and managing the business and affairs of AIC, (2) engaged in embezzlement and/or larceny, and (3) proximately caused AIC's injuries in the amount of $1,446,829.10. Therefore, pursuant to Section 523(a)(4), the debt is not dischargeable. The claim in Count III is based on the allegation that the Debtor intentionally misappropriated and/or converted property of AIC in the amount $1,446,829.10; consequently, pursuant to Section 523(a)(6), the debt is not dischargeable.

In his Complaint, Dr. Gerolimatos also set forth three claims in three separate

Counts. In Count I, it was alleged that the Debtor's false pretenses, false representations, and/or actual fraud proximately caused Dr. Gerolimatos' injuries in the amount of $880,175.00. The claim in Count II is based on the allegation that the Debtor (1) engaged in fraud or defalcation while acting in a fiduciary capacity (2) engaged in embezzlement and/or larceny, and (3) proximately caused Dr. Gerolimatos' injuries in the amount of $880,175.00. The claim in Count III is based on the contention that the Debtor intentionally misappropriated and/or converted property of Dr. Gerolimatos in the amount $880,175.00; consequently, pursuant to Sections 523(a)(2)(A), (a)(4), and (a)(6), the debt is not dischargeable.

The Motions for Judgment on the Pleadings presently under consideration were filed by AIC and Dr. Gerolimatos on March 13, 2006. In due course, the Debtor filed his Response to AIC's Motion for Judgment on Pleadings; and Motion for Summary Judgment, (Adv.Pro. No. 06–00014, Doc. No. 18); and his Response to Dr. Gerolimatos' Motion for Judgment on Pleadings and Motion for Summary Judgment, (Adv.Pro. No. 00006–23, Doc. No. 16).

The facts as recited above, as noted earlier, are without dispute. Based on these facts, it is the contention of the two plaintiffs, AIC and Dr. Gerolimatos respectively, that based on the doctrine of collateral estoppel, the Debtor should not be permitted to relitigate the issues established in the arbitration process and judgment entered by the McHenry County Court. The Plaintiffs' Motions for Judgment on the Pleadings will be treated as Motions for Summary Judgment.

In order to prevail on a motion for summary judgment, the moving party bears the initial burden of establishing that there are no genuine material issues of fact to be determined and that the party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining if the moving party has satisfied its burden, the court considers all facts and inferences to be drawn from the facts in a light most favorable to the party opposing the motion. *Matsushita Elec. Ind. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ In order to determine whether collateral estoppel will bar the Debtor from litigating the dischargeability of the debts owed AIC and Dr. Gerolimatos, it is necessary first to determine which state's law governs the matter. Because the Debtor filed this Chapter 11 case in Florida, the choice-of-law rules of Florida will apply to a determination of which state's law of collateral estoppel will be used. *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 661 (Bankr.M.D.Fla.2002) (*citing Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co.*, 944 F.2d 809, 812 (11th Cir. 1991)); *see In re Deer Creek Products, Inc.*, 325 B.R. 913, 915 (S.D.Fla.2005). Florida applies the "significant relationship" test when determining which forum's law applies. *Plath v. Malebranche*, 351 F.Supp.2d 1338, 1341 (M.D.Fla.2005) (citing *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980)). Under the significant relationship test, the law of the state where the injury occurred determines the rights and liabilities of parties unless another forum has a more significant relationship to the parties and the occurrence. *Id.* In order to determine which state has the more significant relationship, Florida courts look to the Restatement (Second) Conflict of Laws (1971). *See Digioia v. Koch & Sons, Div.*

*Of Wickes Man. Co.,* 944 F.2d 809, 812 (11th Cir.1991). The factors outlined in the Restatement are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) Conflict of Laws, § 145(2) (1971) (cited in *Jenkins v. Rockwood,* 820 So.2d 426, 427 (Fla. 4th Dist.Ct.App.2002)).

■ Applying the factors outlined above to the facts of record in the present matter, this Court is satisfied that Illinois has the more significant relationship to the issues and occurrences in this dispute. All of the activities that led to the litigation took place in Illinois; the alleged injuries took place in Illinois; and the business relationships were entered into in Illinois and involved business entities formed under the law of Illinois. Although the Debtor now claims residency in Florida, this single factor does not outweigh each of the other factors combined.

■ Based on the foregoing, this court is satisfied that the principles of collateral estoppel as applied by Illinois courts should govern the following analysis. Collateral estoppel is used to prevent parties from litigating in subsequent proceedings issues that have been argued and decided against them previously. *In re T.G.,* 285 Ill.App.3d 838, 221 Ill.Dec. 126, 674 N.E.2d 919, 926 (1996). Under the applicable state law of Illinois, in order for collateral estoppel to apply, (1) the issue presented in the current action must be identical to one decided in prior adjudication; (2) there must have been a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or a party in privity with a party to the prior adjudication. *American Nation-al Bank & Trust Company of Chicago v. Regional Trans. Authority,* 125 F.3d 420, 430 (7th Cir.1997).

■ The second and third criteria, finality of the judgment and identity of the parties, are clearly met in this case. At issue is the first criterion, the requirement that the issue to be decided in the instant case and the issue previously decided be identical in nature. " 'In order for a previous judgment to be conclusive, it must appear *clearly and certainly* that the *identical and precise* issue was decided in the previous action.' " *Id.* (quoting *Hexacomb Corp. v. Corrugated Sys., Inc.,* 287 Ill. App.3d 623, 222 Ill.Dec. 893, 678 N.E.2d 765, 771 (1997)(emphasis added)). Accordingly, the Court examines the record to determine whether a decision was rendered on the issues of (1) fraudulent or false pretenses or representations which proximately caused the Movants' injuries; (2) fraud or defalcation by the Debtor while acting in a fiduciary capacity; (3) embezzlement or larceny committed by the Debtor, and (4) intentional misappropriation or conversion of property by the Debtor.

■ The Arbitrator noted that AIC's claims were based on theories of breach of fiduciary duty, conversion, fraud, and civil conspiracy. The Arbitration Decision awarded damages to AIC against the Debtor and others under the following headings:

● Payments to Intermedic: $446,563.

● Payments to CCG: $219,553.

● Payments to Dr. Cassidy as Medical Director/Manager: $67,093.

● Marketing/Build–Out For High Tech Palatine: $94,902 ($204,917—$125,000 payment).

● Build–Out of CT Room/Debt From S.I.C.: $243,338.

• Build–Out of CT Room For C.I.S. and Debt Due From S.I.C.: $86,278 Total against CIS and SIC.

With the exception of Marketing/Build–Out For High Tech Palatine, the Arbitrator did not state the basis for any of the awards to AIC. The amounts awarded for High Tech were explicitly stated as due to "an egregious violation of fiduciary duty by Dr. Cassidy and Craig Palmquist." Similarly, although the Arbitrator denied all but one of Dr. Gerolimatos' claims, that single exception was an award against the Debtor for a breach of fiduciary duty.

 Federal law determines whether a person acts as a fiduciary for purposes of dischargeability. This standard is narrower than the traditional meaning of fiduciary; for purposes of Section 523(a)(4), a fiduciary duty requires the existence of an express or technical trust. *In re Cato,* 218 B.R. 987, 991 (Bankr.M.D.Fla.1998)(citing *In re Blackburn,* 209 B.R. 4, 9 (Bankr. M.D.Fla.1997)). The existence of a fiduciary duty may be established by state or federal statutes, but "statutorily imposed duties that do not rise to the level of an express or technical trust are insufficient." *Id.* It has also been recognized that a fiduciary duty may exist based on a special relationship between the Debtor and another party. For example, under state and federal law a corporate officer owes a fiduciary duty to the corporation. *See Pepper v. Litton, 308 U.S. 295, 306–07, 60 S.Ct. 238, 84 L.Ed. 281,* (1939); *see also In re McCoy,* 121 B.R. 637, 640 (Bankr. M.D.Fla.1990). *Cf. Matter of Moreno,* 892 F.2d 417 (5th Cir.1990)(upholding bankruptcy court finding that claims against corporate officer for defalcation in fiduciary duty were nondischargeable).

 The Arbitration Decision does not state the Arbitrator's ultimate findings of fact or provide an analysis which would intimate the standards or law that led to the Arbitrator's conclusions. Because the Arbitration Decision, in awarding damages to Dr. Gerolimatos and AIC (under Marketing/Build–Out For High Tech Palatine) for the Debtor's breach of fiduciary duty, does not state the basis for the Debtor's fiduciary duty, it cannot be said with any degree of certainty whether the Arbitrator applied a standard equivalent to the more restricted federal standard discussed above. Similarly, the Judgment Order entered by the McHenry County Court on the Arbitration award merely confirms the awards made by the arbitrator and is devoid of documented findings of fact and analysis of law. This unfortunate situation leaves the Court unable to determine whether the individual awards were made pursuant to findings of fraud, breach of fiduciary duty, civil conspiracy, conversion, or some combination of the four.

It is true that an award based on fraud or defalcation while acting in a fiduciary capacity is not dischargeable pursuant to Section 523(a)(4). However, because the basis for the Arbitration award cannot be established based on the record before the Court, it cannot be said with any degree of certainty that the issues resolved in the Illinois proceedings were identical to the issue presently before the Court.

Based on the foregoing, this Court is satisfied that the principles of collateral estoppel are inapplicable to the issues before the Court and it is therefore inappropriate to dispose of the present claims by way of Summary Judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Plaintiff AIC's Motion for Judgment on Pleadings, treated as a Motion for Summary Judgment (Adv.Pro. No. 06–00014, Doc. No. 9) be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that Plaintiff Dr. Gerolimato's Motion for Judgment on Pleadings, treated as a Motion for Summary Judgment (Adv. Pro. No. 06–00023, Doc. No. 8) be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that Defendant Debtor's Motion for Summary Judgment (Adv.Pro. No. 06–00014, Doc. No. 18) against AIC be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that Defendant Debtor's Motion for Summary Judgment (Adv.Pro. No. 06–00023, Doc. No. 16) against Dr. Gerolimatos be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that a pre-trial conference shall be held on September 7, 2006, beginning at 10:30 a.m. at the United States Bankruptcy Courthouse, Fort Myers, Federal Building and Federal Courthouse, Room 4–117, Courtroom D, 2110 First Street, Fort Myers, Florida, in order to prepare the issue for trial.